IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
UNITED STATES OF AMERICA      )
                              )
          v.                  )
                              )     01:05cr083(JCC)
LOUAY HABBAL,                 )
                              )
          Defendant.          )
```

<u>**M E M O R A N D U M   O P I N I O N**</u>
(Statement of Reasons)

This matter is before the Court for sentencing.

## I.  BACKGROUND

On July 7, 2005, the defendant, Louay Habbal, pled guilty to a single count indictment charging him with the operation of an unlicensed money transmitting business in violation of 18 U.S.C. § 1960.  According to the defendant's Plea Agreement, he "specifically" pled guilty to "unlawfully transmitting . . . $6,354,353 during the limited time period of December 2003 through July 2004."  The defendant's money transmissions occurred during the course of his operation of Mena Exchange, which was a "hawala" business.  The defendant received money from customers in the United States and transmitted such money overseas, using the hawala system, to places including Europe, Lebanon, and Syria.  He operated Mena Exchange without obtaining a license from the Virginia State Corporation Commission, as required by Va. Code § 6.1-371.  For the reasons stated herein, the Court sentences the defendant to twelve (12)

months and one (1) day imprisonment, and two (2) years supervised release, during which time the defendant is not to operate a hawala business.

## II.   STANDARD OF REVIEW

In *United States v. Booker*, the Supreme Court held 18 U.S.C. § 3553(b)(1) to be unconstitutional insofar as it made the United States Sentencing Guidelines mandatory.  *United States v. Booker*, 125 S.Ct. 738, 755-56 (2005).  The Court thus severed the unconstitutional portion of § 3553, rendering the Sentencing Guidelines advisory.  *Id.*, 125 S.Ct. at 756-57.  In *United States v. Hughes*, the Fourth Circuit stated:

> Consistent with the remedial scheme set forth in *Booker*, a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines.  Then the court shall consider that range as well as other relevant factors set forth in § 3553(a) before imposing the sentence.

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

## III.   ANALYSIS

### A.   Guideline Range

The Sentencing Guidelines provide that the base offense level for a violation of 18 U.S.C. § 1960 is "6 plus the number of offense levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to the value of the funds . . . ."  U.S.S.G. § 2S1.3(a)(2).  Based on the defendant's admission to transmitting $6,354,353, the table in U.S.S.G. §

2B1.1 recommends an enhancement of 18 levels.  Accordingly, the defendant's base offense level is 24.

The government has filed a Motion for Additional Downward Adjustment, indicating that the defendant has clearly accepted responsibility for his offense in a timely fashion. Accordingly, the Court finds that the defendant is entitled to a 3-point offense level deduction.  U.S.S.G. § 3E1.1.  With a criminal history category of I and an adjusted offense level of 21, the sentencing range for the defendant is 37 to 46 months.

### B.  Downward Departure

The Court may depart downward from the applicable guideline range where it finds a mitigating circumstance not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.  *See* 18 U.S.C. § 3553(b)(1); U.S.S.G. § 5K2.0(a)(1).  The defendant asserts such a mitigating circumstance, claiming that he fully intended to comply with the laws governing his business and that his violation resulted from incorrect legal advice.  The evidence before the Court shows, however, that after December 2003, the defendant knew about the Virginia state license requirement, yet operated his business without such a license.  The specific circumstances of the defendant's offense will be further addressed in the context of the Court's consideration of the 18 U.S.C. § 3553(a) sentencing

factors, but suffice it to say for now that this fact alone will not entitle the defendant to a downward departure.

A downward departure from the guideline range may also be appropriate where the violative conduct does not "cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue." U.S.S.G. § 5K2.11. The defendant claims entitlement to this basis for a downward departure. The government has submitted evidence, however, that the defendant transmitted $401,957.50 on behalf of an individual recently charged for smuggling freon from Mexico into the United States. Although there is no evidence that the defendant knew these funds would be used for illegal conduct, the fact that the defendant's money transmissions caused the harm sought to be prevented by the applicable law negates his claim for a downward departure on this basis.

### C.  18 U.S.C. § 3553(a) Factors

Section 3553(a) requires district courts to impose a sentence "sufficient but not greater than necessary," to comply with the purposes of sentencing set forth in § 3553(a)(2): retribution, deterrence, incapacitation, and rehabilitation. The defendant requests that the Court impose a more lenient sentence than that recommended by the Guidelines, based on four factors enumerated in 18 U.S.C. § 3553(a): 1) the history and characteristics of the defendant and the nature and circumstances

-4-

of the offense; 2) the kinds of sentences available; 3) the needs of the public; and 4) the need to prevent unwarranted sentencing disparities.  The defendant requests that the Court impose a sentence of probation.  In contrast, the government requests the Court to impose a sentence within the guideline range.

1.  History and Characteristics of the Defendant; Nature and Circumstances of the Offense

The defendant was born in Syria and immigrated to the United States in 1978, where he entered Boston University.  He graduated and later was granted his U.S. citizenship on January 8, 1991.  The defendant spent fifteen years working in Washington, D.C., at Riggs Bank, where he was steadily promoted throughout his tenure.  In April 2001, the defendant departed Riggs Bank to operate the Mena Exchange.  The defendant also worked as an independent financial consultant on occasion after he left the employment of Riggs Bank.

According to the defendant, when he first established Mena Exchange as a full time business in Virginia, he took affirmative steps to ensure his full compliance with the law. The defendant sought advice about the legal requirements for operating his business from Mark Sandground, an attorney licensed in Virginia.  Sandground was unaware of the Virginia licensing requirement imposed by Va. Code § 6.1-371 and did not advise the defendant of this requirement.  Although the defendant began operating business without obtaining this state license, he

-5-

registered his company with the Department of the Treasury, as
required by 31 U.S.C. § 5330, and otherwise complied with the
legal requirements governing his business.  He also met with an
agent from the Federal Bureau of Investigation ("FBI"), to
discuss how to recognize individuals who might use the Mena
Exchange to transmit money for illegal purposes.  In December
2003, Sandground learned of the Virginia state licensing
requirement and informed the defendant.  However, Sandground
advised the defendant to continue operating without his state
license until he received a cease and desist order from the
Commonwealth of Virginia.  The defendant has attached an
affidavit from Sandground corroborating the above facts.

According to an attorney-client memorandum submitted by
the government, the defendant sought legal advice from a second
law firm in April 2004 on obtaining the required licenses in
Virginia and the District of Columbia.  At this time, the
defendant was informed of the Virginia, District of Columbia, and
federal statutes prohibiting the unlicensed operation of a money
transmission business, as well as the criminal penalties
therefor.  The defendant continued to operate Mena Exchange and
sought further legal advice in May 2004 from a third attorney,
John More.  The defendant informed More that he was uncomfortable
operating in Virginia without a license and sought to transfer
his business into the District of Columbia.  More informed the

-6-

defendant that his operation of an unlicensed business in Virginia would likely be an impediment to a District of Columbia license, but was unable to obtain a conclusive answer for the defendant. According to More, whose affidavit the defendant has submitted, the defendant considered closing down Mena Exchange, but chose not to do so out of concern for the customers who had come to depend on him.

The defendant argues that his violation of 18 U.S.C. § 1960 was unintentional. He argues that his conduct shows that he sought only to comply with the applicable legal requirements from the time he began operating a hawala business. He cites the fact that he registered Mena Exchange with the Department of the Treasury, cooperated with the FBI to operate his business in a manner to identify those who would use it for illegal purposes, and never structured transactions to evade the federal reporting requirements.

For its part, the government concedes that the defendant registered with the Department of the Treasury from December 10, 2001 to December 31, 2003. The government contends, however, that the defendant operated Mena Exchange without complying with the federal registration requirements from January 1, 2005 until March 2005, at which time the defendant was

indicted.[1]  The government also contends that the defendant
failed to disclose that he had ownership interests in, and
control over, foreign bank accounts when he filed his Schedule B
tax returns, in violation of 26 U.S.C. § 7206, and that the
defendant transported goods through the United Arab Emirates to
Syria, in violation of sanctions imposed by an Executive Order
dated May 12, 2004.  The defendant disputes these allegations.
Regardless, the defendant has never been charged with any of this
alleged misconduct, and the government has not in this proceeding
offered evidence of it.

        Based on all of the above factors, the Court finds that
the defendant's culpability was not substantial.  There is no
evidence to suggest that the defendant knew of the Virginia
licensing requirement until December 2003.  The defendant's
registration with the Department of the Treasury and his
cooperation with the FBI indicate that, at least at the outset of
his business, he sought to comply with all legal requirements
rather than attempt to hide his business from the authorities.
The Court is also mindful, however, that the defendant operated
Mena Exchange after becoming aware of the state licensing

---

[1]The Court notes that while the defendant pled guilty specifically to
transmitting $6,354,353 between December 2003 and July 2004, he also
stipulated to the truth of the Statement of Facts accompanying his Plea
Agreement, which states that the defendant operated the Mena Exchange until
March 2005.  Neither the Plea Agreement nor the Statement of Facts states that
the defendant operated the Mena Exchange without having registered with the
Department of the Treasury, and to any extent that the defendant did so, he
claims that this violation was unintentional.

requirement until March 2005.  The defendant points to the fact
he never structured transactions in violation of 31 U.S.C. § 5324
to evade federal reporting requirements, but the Court agrees
with the government that this fact does not militate in favor of
leniency.  It is simply not a persuasive basis for leniency that
the defendant chose not to violate a separate statute.  Finally,
the government has submitted evidence that the defendant
transmitted $401,957.50 on behalf of an individual recently
charged for smuggling freon into the United States.  While the
Court takes note of this factor, there is no evidence to suggest
that the defendant knew these funds were to be used for illegal
conduct, and indeed, the defendant contends that he exercised due
diligence in ensuring that this money would not be used for
illegal ends.

        The Court also notes that this is the defendant's first
criminal offense, notwithstanding traffic infractions.  Since his
arrival in the United States, the defendant has received his
citizenship, maintained stable employment, and raised and
supported a family.  There is nothing in the personal history and
characteristics of the defendant to suggest that he poses a risk
of recidivism.

2.  The Kinds of Sentences Available

        The defendant has pointed out that a violation of 18
U.S.C. § 1960 is a Class D felony.  *See* 18 U.S.C. § 3559(a)(4).

As such, the defendant submits that this Court has the discretion to impose a sentence of probation. *See* 18 U.S.C. § 3561(a). Finally, the defendant argues that after *Booker*, this Court is no longer limited by the sentencing zones established in U.S.S.G. § 5C1.1. Accordingly, the defendant contends that this Court now has the discretion to impose a sentence other than a term of imprisonment, and he requests that the Court do so in his case.

3.  The Needs of the Public

As the Court has already discussed, the defendant's violation of § 1960 was unintentional until approximately December 2003. The circumstances before that date indicate not that the defendant sought to hide his business from the authorities, but rather that he was misinformed about the applicable legal requirements. Nevertheless, the defendant continued to operate Mena Exchange after December 2003, knowing that he was doing so in violation of the law. In April 2004, the defendant became fully aware of the potential state and federal penalties for his conduct, and yet continued to operate Mena Exchange. For this reason, the Court finds that a term of imprisonment is necessary to reflect the seriousness of the defendant's offense.

While the Court will impose a term of imprisonment, it will also find that a sentence within the range recommended for a Category I offender with an offense level of 13 would be

-10-

"sufficient, but not greater than necessary," 18 U.S.C. §
3553(a), to satisfy the public interests involved.  First, the
lack of circumstances suggesting that the defendant poses a risk
of recidivism shows that there is no compelling need for specific
deterrence or incapacitation in this case.  Second, the
circumstances before December 2003 indicate not only that the
defendant sought to comply with the applicable legal
requirements, but also that he took affirmative, voluntary steps
to prevent illegal uses of his business.

        Third, as this Court stated in *United States v. Bariek*,
No. 05-150, slip op. at 14 (E.D. Va. Sept. 3, 2005), a
significant penalty would not provide substantial general
deterrence.  Insofar as 18 U.S.C. § 1960 imposes a federal
penalty for failure to obtain a state money transmission license,
it operates in patchwork fashion, only prohibiting such conduct
where state law prohibits the unlicensed operation of a money
transmission business.  For this reason, the operator of a money
transmission business could legally engage in conduct identical
to the defendant's by operating in a state that did not prohibit
the practice.  A significant penalty would likely do little to
deter would-be money launderers, as they could simply move their
operations to states where they would not face the federal
penalty.

For these reasons, the Court finds that a term of imprisonment within the Level 13, Category I range would be sufficient, but not greater than necessary to meet the public interests in reflecting the seriousness of the defendant's offense, providing deterrence, protecting the public, and rehabilitating the defendant.  This range would yield a sentence of twelve to eighteen months of imprisonment.

## 4.  Unwarranted Sentencing Disparities

Section 1960 only prohibits the operation of an unlicensed money transmitting business where such operation is "punishable as a misdemeanor or felony under State law."  18 U.S.C. § 1960(b)(1)(A).  The defendant points to the fact that if he had lived in a state that did not criminally punish the operation of an unlicensed money transmitting business, he would not be facing a federal sentence.  He argues that this creates an unnecessary sentencing disparity.

In sentencing a defendant, the Court will take into account "the need to avoid unwarranted sentence disparities among defendants with similar records *who have been found guilty of similar conduct*."  18 U.S.C. § 3553(a)(6) (emphasis added).  The disparity complained of by the defendant is not a sentence disparity at all; rather, it is a disparity in the fact-of-violation.  Individuals located in states that do not criminalize the unlicensed operation of a money transmission business do not

-12-

face any criminal liability under § 1960 whatsoever.  As such, there are no "defendants with similar records who have been found guilty of similar conduct" in states that do not criminalize the conduct prohibited by § 1960.  18 U.S.C. § 3553(a)(6).  No sentencing disparity exists between the defendant and individuals operating money transmitting businesses in states that do not criminally punish such conduct.

The defendant also points to the disparity in punishments between § 1960 and Virginia law.  Had he been charged with the same conduct in state court, he would have faced a misdemeanor conviction, with a potential sentence of up to one year of imprisonment.  Va. Code § 6.1-375.  Since *Booker*, some courts have considered such disparities between state and federal punishments in imposing sentences.  *E.g.*, *United States v. Lucania*, 379 F. Supp. 2d 288, 296-97 (E.D.N.Y. 2005)

The predominant federal interest served by § 1960 is the regulation of money transmitting businesses to ensure that they do not channel funds from the United States to terrorists, drug traffickers, or other criminals abroad.  Here, the only wrongdoing to which the defendant pleaded guilty was operating a money transmitting business without having obtained the appropriate state license.  The defendant complied with the federal regulatory requirements by registering his business with the Department of the Treasury.  Moreover, the defendant

-13-

voluntarily cooperated with the FBI to take preventative measures against those who would use his business to transmit funds for illegal purposes.  As the defendant's conduct appears to have at least partially satisfied the federal regulation interest, little purpose would be served by imposing a substantially harsher penalty than that allowed by the Commonwealth of Virginia for violation of its own business licensing requirement.  A significant sentencing disparity with what the defendant would face in state court would thus be unwarranted.

### IV.  CONCLUSION

For the foregoing reasons, the Court will sentence the defendant, Louay Habbal, to twelve (12) months and one (1) day in prison, and two (2) years supervised release with the special condition that the defendant is not to engage in a hawala business during this time.

October 17, 2005                   _____/s/_____
Alexandria, Virginia                     James C. Cacheris
                                   UNITED STATES DISTRICT COURT JUDGE